Move to the fourth case this morning, uh, U. S. Versus Jackson. Yes, you may. May it please the court. Good morning. My name is Thomas Branstrader. I represent Gwendolyn Jackson before this honorable court. I'd like to, of course, I'm sure the court's aware of this. After all the briefs were filed in this matter, my client filed a pro se motion to supplement a brief. The deadline for the submission of that brief was last Friday. As of this morning, I don't believe anything's been filed. I wish I could inform the court what my client is thinking of. And sadly, our communications have broken down. I am unaware of what issues she seeks to raise. We are here asking the court to consider two separate issues, and I'd like to start with the one that there is some agreement on, and that is the imposition of the obstruction of justice enhancement by the district court at sentencing. Uh, if I read the government's position correctly, they agree that the proper standard was not acknowledged by the district court and imposing that. However, I believe their position is that the issue was forfeited. It is a fact trial counsel said on the record he did not object either pre sentence in writing to the administration of this enhancement. However, at sentencing, the district court, when addressing this enhancement indicated that, and I should preface that the obstruction of justice was based on Miss Jackson's trial testimony. Both the government and probation believe that it was applicable based on the fact that she refused to admit certain things that had come out in other parts of the trial. The trial court at sentencing in addressing the application of this specifically said that he is not finding that she deliberately and knowingly lied or lied. He did say that he did not believe that she was not telling the truth during certain portions of her testimony. However, he was, the court was of the opinion that Miss Jackson was the type of person that had convinced herself that the criminal activity swirling around her was not of her doing. And thus she had no knowledge or mens rea to commit these offenses. At this point, trial counsel said to the court, judge, based on what you're saying, uh, I'd like to point out to the court that the enhancement is still within the calculation and the court, the government agreed that the calculation that the court was considering included the two level enhancement. The court acknowledged those statements, but yet rendered a sentencing calculation that still included the two level enhancement. We believe that the particular enhancement at issue requires a finding of knowing, uh, an intentional, uh, lying or perjury on the scan in order for it to be a sentence. The government argues that that may be so, but this issue was forfeited. We'd asked this court to find that trial counsel's pointing out to the court at the time that the enhancement was being discussed can take the form and maybe she, he should have been a little more insistent upon it, but it can take the form of an objection to the imposition of that enhancement on the sentence. And that's this court, of course, has the power to, to consider the issue, uh, under plain error. Uh, the trial counsel, when he became aware of what the court's position was on, uh, what the court felt about the client's testimony at trial, that he was not going to find that it was knowing and deliberate did point out to the court. Uh, well, that enhancement is still involved in the sentence. And we asked, uh, that this court find that that was sufficient for this situation to find that the court can consider this, uh, and find that the enhancement was improperly imposed in this matter based on what the district court said, and at a minimum, remand the matter back to the district court for resentencing. The second issue we raised judge, uh, a little more confusing, a little more clouded, uh, it is Ms. A defense and it's what becomes clouded is the defense that the trial counsel sought to, to, uh, submit to the trier fact was the fact that, uh, Gwendolyn Jackson was in an abusive relationship with Bobby Brown, who was the organizer of this massive scheme. And it was, uh, trial counsel, you wanted to use a November, 2007 incident, a domestic battery incident between Brown and Jackson, the government objected. And the trial district court said, well, that's a, that's a little bit past everything we're talking about. I'm going to find it irrelevant. The trial counsel seemed to take that to mean no abuse will be allowed. No testimony about any abuse to be allowed. In fact, the district court at one point indicated that's not so if she wants to get up and testify that she had an abusive relationship with Bobby Brown, not going to prevent her from doing that. However, then, and she did that. Didn't she? Well, she was intimidated by him. She didn't question what he did because she feared him and that, uh, she was dealing with some abusive situation with him. That's correct, your honor. But that quotes that in their brief, my position on that is that came out of cross-examination. The government asked when Jackson, why didn't you just walk away? And that's when she said, because I was intimidated, it was an abusive relationship and it had been for some time, favorable testimony in her cross-examination. It was, but if nothing was asked on direct, when we'd hope that the trier of fact is listening to the defendant answering questions from her own counsel, not one question is related. And I think that's because trial counsel may have misunderstood judge Zegel's position on what the abuse was. In fact, just prior to Ms. Jackson testifying, trial counsel asked judge Zegel, no abuse, right? And the judge said, yes, I'm sure judge Zegel was thinking, you're not going to get that other domesticant. And then during the course of the cross-examination, when the judge, when the government asked, why didn't you just walk away? A little later, trial counsel approached and said, judge, did he open the door? And again, uh, judge Zegel went on for a little bit. And I think there's even a little bit of a reference that judge Zegel thought he was talking about it. Can I get the domesticant now? But judge Zegel said, no, he didn't open the door. No questions about abuse. The court is absolutely correct. On redirect, nothing was asked about the fear, the intimidation or any of that by, by, uh, by trial counsel. And the court is correct. She did get to put it in front of the trier effect, but it came through cross-examination and a not direct defense. That was not argued to the jury at all by the defense that, that, that she did not act intentionally to fraud because she was really just following Bobby Brown's direction. She was fearful of him. That was not, well, he made, he painted a picture of who Gwen Jackson was and what she was involved in, what Bobby Brown was, um, and the defense, but yet Brown ran the show and she just did what he told him. Exactly. And he, um, came out in many different forms. He was an intimidating figure. He threatened some other witnesses when they wouldn't do what he wanted them to do. So the jury heard a lot about that. Yes. And that he was the mastermind of this $90 million mortgage fraud. And it came out through even the government's witnesses when Gwen wouldn't do what Bobby wanted, Bobby started another company. In fact, I think he started two companies after, uh, Global, which was a company that Gwen was involved in. Uh, it's, it's, it's a clouded issue in that does it reach coercion? I don't know. Uh, but we feel that the trier of fact did not get a full picture of the relationship that Ms. Jackson found herself in when all of these things were happening and that it may have helped the trier of fact, determine whether she possessed the requisite knowledge and, uh, intent to commit these crimes or was she acting in fear of Bobby Brown, who of course was the mastermind. Um, and again, we believe judge that the, at a minimum, the matter, uh, is right for return to the district court for resentencing based on the improper imposition of the obstruction of justice enhancement. Thank you. Good morning. Your honors. My name is bomb fire. Bomb guard, Francis bomb guard represent Latonia. I'm having trouble hearing you. My name is Francis bomb guard. I represent Latonia Spencer. I was been informed by the clerk that because I didn't indicate a specific issue and there's only one issue with severance here on the blue card and in our registration that, um, I am taking up your time without it having been scheduled. Obstruction is not asserted by Latonia Spencer. It is that's consolidation, but I'm not arguing that is what I meant to say. The only thing I presume is yes. That's the only thing I went. So I don't know whether I should proceed or not, and I'm not going to be presumption about it. Should I, or should we wait long enough? Well, it'll be moved on. Let me just say, well, go ahead and we'll, we'll take it up with the government. We will rely on the, we will rely on the record. Basically. Um, there's nothing that I can tell you that you can't get from the record and hasn't been picked up by the government. Uh, the lady was over her head. She didn't know what's going on. And because she was tried with all of these other parties and the Hernells were one of them, we're alleging that there was some, there was enough of a controversy between them finger pointing, but that's all it was. And if the state, she moved it to close with the government's evidence for severance, she did not judge. Doesn't that, yes, I'm not going to waste your time talking. Okay. That's all I have to say. Thank you. Thank you. Appreciate the graciousness. May it please the court to address this last issue for the severance issue, Your Honor. Um, well, as was just pointed out, we could find no indication in the record that Ms. Spencer raised this at any point, and certainly not at the close of the government's case. Um, and she's therefore waived that issue under this court's precedent. And I haven't heard anything different today. Um, with respect to the issue of Ms. Jackson's obstruction, I'll start with that. Um, we are not contesting that this issue should be remanded to the district court. Um, as we lay out in our brief, I think the issue is on remand, whether or not to allow the district court to consider whether it can apply the obstruction enhancement. I think there was some ambiguity about what the court meant. I know what the plain language is in the transcript, but when it was brought to the district court's attention, the district court indicated that it thought despite what the literal words that had used a few minutes before were, it did not think whatever its view of her mental state was that it excused obstruction. So we think the district court should be given the chance to explain its, its finding. So you agree that it should go back for consideration of what the court meant by obstruction of justice. Yes, Your Honor. We're not contesting that. Um, Ms. Spencer, I guess it's not addressing the obstruction issue. I can address it if the court would like, but I, we think the court made a sufficient finding, um, to not err in that regard either. And then finally on this issue of, um, alleged abuse, the district court did not abuse its discretion when it precluded Jackson from introducing evidence of post event conduct that post dated by many months, the actual transactions at issue when this was first raised. Again, the only issue, I'm a little confused by that because I don't have your indictment in front of me, but I thought the indictment alleged that the 2008. It did, Your Honor. Alleged a broad conspiracy and continuing through that point, but with I think originally 19 defendants. Statement of the case on page two says that, uh, Jackson, uh, participated in a scheme to defraud from approximately August, 2004 through May, 2008. The scheme in which she. That's what you say in your brief, right? Correct, Your Honor. So, uh, an event, a battery event in November of 2007 is within that timeframe during her continued participation in the scheme. Your Honor, it is within the timeframe of the larger scheme. There were 19 defendants that were part of that scheme. Some of their conduct participants in that scheme. But your brief, your brief doesn't say that her participation ends. It says it can, that she participated from August of 2004 through May of 2008. I'm sorry. I thought what we said was that she participated in a scheme that lasted that long, not that her individual participation lasted that long though. She participated in a scheme that, that for that period, the scheme did her participation and it did not, Your Honor. I see. Okay. I'm, I'm trying to, I'm trying to drive it out or withdrew. Well, if you look at the, I'm sorry, Your Honor, I didn't mean to cut you off. Dropped out or withdrew prior to November of 2007. The last charged conduct that's actually charged against Ms. Jackson was March, 2006. That's count 12. That is the last transaction. Didn't do anything further. There was nothing charged after that event. And the actual, so with respect to her, as far as the indictment goes and what she was defending against at trial. That's correct, Your Honor. And so when he raised that, but when she was allowed to testify and the district court did allow her to testify, she testified quite extensively that Bobby Brown controlled her company, that she never did, that she didn't know anything about the business because he didn't allow her to, that if she asked for details, he would holler and scream at her, that he was very intimidating, that he was an ex gang member. And then indeed on response to a question on cross, she said she was in an abusive relationship. Up to that point. And her counsel didn't go back to that on redirect, left it? Well, what happened was at that point, Your Honor, he asked the court, I think the government's opened the door. And this is now the first time that there's been any mention of abuse occurring at the time of the transactions at issue and not been raised on her direct, not been proffered up to that point. He now says, I'd like to get into abuse occurring at the time of the transactions and the district court and its discretion found that that door had not been opened by the government asking a question to what she's offered for the, you know, this issue of abusive conduct. And did defense counsel argue to the jury on her behalf that her conduct was not intentionally fraudulent because she was just acting in fear of Mr. Brown? That was one of the main themes of the defense as I understood it, Your Honor. And it's reflected in the record. And I guess I would also just point out that this issue of when the abuse was examined, that ruling that the district court made in excluding it at that time, any new allegations of abuse was not actually raised in the appellate's brief. And so we'd say that actual ruling has been waived and was not preserved. Unless the court has other questions, we ask that the judgements be affirmed with the limited remand on that issue. Thank you. Thank you. When the abuse was first presented to the district court by the trial counsel, one, there was the motion limiting about the domestic, but two, at page 1938 of the transcript, trial counsel brought it up again with district court because the district court had made some comment that you'd probably need an expert witness to show that abuse of relationships between business partners is very unusual. Um, trial counsel said to the district court, I just want to clarify, so I don't violate Your Honor's order, just to be clear, Gwen Jackson can't testify about any physical abuse, is that right? The court, that's right. This is that, uh, prior to her testimony. So it is, there's actually three incidents of trial counsel talking to the district court about, can I produce this evidence and getting what I'd say, kind of mixed responses. The first time after he's saying, I'm not going to let you do the domestic battery, but she wants to testify about abuse with Bobby Brown. She's got a right to testify to that. But then two later instances, he says when, and possibly trial counsel should have been more precise, but two further incidents, the first one, this 1938, and then second, did they open the door? District court said, no, they didn't. No abuse. Thank you very much. Thanks to, uh, both counsel and, uh, the case will be taken under advice.